FILED

2020 Dec-22  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SNIDER TIRE, INC. | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:20-CV-01775-GMB |
| | ) | |
| TIMOTHY CHAMPMAN and | ) | |
| SOUTHERN TIRE MART, LLC, | ) | |
| | ) | |
|    Defendants. | ) | |

## BRIEF IN SUPPORT OF
## DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendants Timothy Chapman ("Chapman") and Southern Tire Mart, LLC ("STM"), submit this brief in support of their Rule 12(b)(6) Partial Motion to Dismiss the claims of Plaintiff Snider Tire, Inc. ("Snider") for (i) breach of non-compete/non-solicitation covenants, (ii) misappropriation of trade secrets, (iii) breach of a duty of loyalty, and (iv) tortious interference with contractual relations.

## FACTUAL BACKGROUND

1.    Chapman was employed by Snider from approximately July 1, 2017, through October 2, 2020. Doc. 1 at 2, ¶ 6.

2.    At the time of his resignation from Snider on October 2, 2020, Chapman held the position of Senior Fleet Account Manager, and his duties included sales of Snider's products and services. *Id.*

3.      On December 6, 2019, while employed by Snider, Chapman purportedly affixed his electronic signature to an Employment Agreement with Snider. Doc. 1 at 3, ¶ 7. A copy of the Employment Agreement is Exhibit A to the Complaint. Doc. 1-1.

4.      Paragraph 6 of the Employment Agreement, entitled "Covenant Not to Compete/Solicit/Interfere," is a separate option contract, which provides in pertinent part:

> Within ten (10) days of separation from employment for any reason, the Company [Snider] shall provide written notice to Employee [Chapman] of its decision to invoke the provisions of this Paragraph. This notice shall include the duration of the restrictions set forth below, not to exceed twelve (12) months. In the event that the Company invokes the restrictions set forth under this Paragraph, during the term of such restrictions, it shall pay to Employee as post-employment severance, paid on regular Company paydays, the greater of Employee's last Annual Base Salary or prior calendar year's Form W-2 earnings, prorated where appropriate for a partial year period. Under these restrictions, Employee will not: …

Doc. 1-1 at 2, ¶ 6 (emphasis added).

5.      There is no notice provision within the non-compete/non-solicitation option contract of Paragraph 6. *Id.*

6.      Paragraph 10 of the Employment Agreement contains the following notice provision: "All notices and permitted to be given under this Agreement shall be in writing and shall be deemed to have been given when mailed by certified or registered mail, return receipt requested, addressed to the intended recipient as

follows, or at such other address as is provided by either party to the other:…" Doc. 1-1 at 3, ¶ 10 (emphasis added.)

7.    Chapman tendered his resignation to Snider on October 2, 2020, and offered to work a two-week notice period, but Snider instead elected to terminate Chapman effective October 2, 2020. Doc. 1 at 2, ¶ 6.

8.    Snider prepared a letter to Chapman dated October 5, 2020, stating that it invokes the non-compete/non-solicitation restrictions of Paragraph 6 of the Employment Agreement for a period of nine months. Doc. 1 at 3, ¶ 5.

9.    Copies of Snider's October 5, 2020 letter and the accompanying certified mail receipt provided by Snider's counsel are submitted as **Exhibit 1**.

10.    According to publicly available information on the United States Postal Service's tracking website for parcel number 7019 1120 0001 3632 6316, Snider's letter was first processed by the USPS on October 7 in Charlotte, it arrived at the Birmingham distribution center on October 9, and it went out for final delivery on October 13, 2020 but has not been delivered. The USPS product information and tracking history of Snider's letter is submitted as **Exhibit 2** and also can be found at: https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777= &tLabels=70191120000136326316%2C&tABt=false.

11.     None of the boxes for "Return Receipt" by hardcopy or electronic format are marked on Snider's certified mail receipt for its October 5, 2020 letter. Ex. 1 at 2.

12.     Similarly, the United States Postal Service's product information for Snider's letter, parcel number 7019 1120 0001 3632 6316, indicates the letter was sent by certified mail, but there is no notation in the USPS system that a return receipt request accompanies the letter. Ex. 2 at 2, Product Information.

13.     If a sender requests and pays the added cost for return receipt, the USPS website for the parcel would separately state "Return Receipt." An example of the USPS product information of a publicly available certified mailing with return receipt request is submitted as **Exhibit 3** and also can be found at:

https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabels=9414726699042172090051%2C.

14.     Snider's October 5, 2020 letter attempting to invoke the non-compete/non-solicitation option contract has not been delivered to the intended address or received by Chapman. Ex. 2 at 1, Tracking History; Doc. 1 at 4, ¶ 14.

15.     Snider does not allege in the Complaint that it satisfied all conditions precedent or that it made severance payments to Chapman on the regular company paydays. *See* Doc. 1 at 4, ¶ 15.

16.     Snider's counsel, as an officer of the court, will acknowledge that Snider did not pay post-termination severance to Chapman on Snider's regular company payday.

17.     While employed, Snider paid Chapman by direct deposit his prorated base salary every two weeks on Fridays, unless the Friday was a holiday in which case the payment was typically made the business day before. Declaration of Timothy Chapman at 2, ¶ 4, submitted as **Exhibit 4**. Specifically in the three months leading up to termination, Snider paid Chapman the same salary payment every two weeks on July 2, 17 and 31, August 14 and 28, and September 11 and 25, 2020. *Id.*

18.     While employed, Snider also paid Chapman by direct deposit on the last regular payday of the month, specifically on July 31, August 28, and September 25, 2020, his commissions earned in the previous month. Ex. 4 at 2, ¶ 5.

19.     After termination, Snider paid Chapman by direct deposit on Friday, October 9, 2020, a salary payment for services rendered prior to termination. Ex. 4 at 2, ¶ 6.

20.     On Snider's next regular payday, Friday, October 23, 2020, Snider paid Chapman by direct deposit the commissions he earned in September, but Snider did not to pay Chapman any severance under the terms of the non-compete/non-solicitation option contract. Ex. 4 at 2, ¶ 7.

21.     Snider's first severance payment to Chapman was by direct deposit on October 30, 2020, one week after Snider's regular company payday. Ex. 4 at 2, ¶ 8.

22.     Chapman is currently employed by STM at its Birmingham store. Doc. 1 at 4, ¶ 16.

23.     STM is a competitor of Snider and located within sixty-five miles of Snider's Birmingham location where Chapman formerly worked. Doc. 1 at 4, ¶¶ 17 and 18.

## STANDARD OF REVIEW

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). While factual allegations are accepted as true and factual inferences therefrom reasonably read in a plaintiff's favor, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bush v. J.P. Morgan Chase Bank, N.A.,* No. 2:15-cv-00769-JEO, 2016 WL 324993, at *1 (N.D. Ala. Jan. 27, 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor is it proper to assume that the plaintiff can prove facts he has not alleged or that the defendants have violated the law in ways that have not been alleged." *Bush*, 2016 WL 324993 at *1 (quoting *Twombly*, 550 U.S. at 563 n.8). To

survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged, and those factual allegations must show more than a possibility that the defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-70 (2009). Unless the facts as alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Where "a successful affirmative defense appears clearly on the face of the pleadings," the complaint fails to state a claim upon which relief can be granted. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Therefore, "when, 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action'" the court must dismiss the action. *Grant v. Phillip Morris USA Tobacco Co.*, No. 09-61052-CIV, 2010 WL 565621, at *2 (S.D. Ala. Feb. 16, 2010) (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

On a Rule 12(b)(6) motion to dismiss, a court typically does not look beyond the face of the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229 (2000). However, "pleadings" for purposes of a Rule 12(b)(6) include attachments to the complaint. *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." *Collins*, 224 F.3d at 499 (quotations omitted). Also, it is "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

## **CHOICE OF LAW**

The Employment Agreement at issue contains a choice of law provision in Paragraph 11, stating: "This Agreement, and any dispute or controversy arising out of or relating to this Agreement, shall in all respects be governed by and construed according to the laws of the State of North Carolina, without giving effect to any principles of conflict of law or choice of law of such State or any other jurisdiction." In Alabama, "the 'right of parties to an agreement to choose a particular state's laws to govern an agreement' is well-settled, so long as the choice-of-law provisions are not contrary to Alabama law or public policy." *Mercedes-Benz U.S. Intern., Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1196-97 (N.D. Ala. 2009) (quoting *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)). Here, the laws of North Carolina and Alabama are consistent, and Snider fails to state claims upon which relief may be granted under the laws of North Carolina and Alabama.

## ARGUMENT AND AUTHORITY

I.   **SNIDER FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR BREACH OF THE NON-COMPETE/NON-SOLICITATION OPTION CONTRACT.**

In Count One of the Complaint against Chapman only, Snider contends that Chapman breached the confidentiality covenant of Paragraph 5 of his Employment Agreement and the separate non-compete/non-solicitation covenants of Paragraph 6. Chapman is moving to dismiss the later.

A.   **Snider did not satisfy the condition precedent of making severance payments to Chapman on regular company paydays, and the contract fails for want of consideration.**

Failure of a condition precedent renders a contract invalid and is an affirmative defense to a breach of contract action. *Duncan v. Auto-Owners Ins. Co.*, 592 So.2d 568, 571 (Ala. 1992); *Middlegate Dev., LLP v. Beede*, LEXIS 88327 at *35-36 (S.D. Ala. 2011). It is well settled under Alabama law that:

> A condition precedent is a fact (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises. A condition precedent may relate either to the formation of a contract or to liability under it. Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the instrument as a whole.

*Duncan*, 592 at 571.

The law of North Carolina is no different. "[R]elief to enforce the terms of a noncompete will not be granted to a party who has committed a breach that is

substantial and material and goes to the heart of the agreement." *Maaco Franchisor SPV, LLC v. Keenevan, LLC*, 2020 U.S. Dist. LEXIS 170768, 2020 WL 5577889 (W.D.N.C. September 17, 2020) (citing *Combined Ins. Co. of Am. v. McDonald*, 243 S.E. 2d 817, 819 (N.C. Ct. App. 1978)). Breach of a dependent clause excuses further performance while breach of an independent clause does not. "Whether covenants are dependent or independent, and whether they are concurrent on the one hand or precedent and subsequent on the other, depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties." *Harris & Harris Const. Co. v. Crain & Denbo, Inc.*, 123 S.E.2d 590, 595 (N.C. App. Ct. 1962). Courts presume the clauses are interdependent. *See id.*

Here, Snider's promise to pay Chapman a calculated severance amount during the restrictive period on Snider's regular paydays is more than a condition precedent of the formation the non-compete/non-solicitation option contract; it is the express consideration of the employee's reciprocal promise to be bound by non-complete/non-solicitation covenants: "In the event that the Company invokes the restrictions set forth under this Paragraph, during the term of such restrictions, it shall pay to Employee as post-employment severance, <u>paid on regular Company paydays</u>, the greater of Employee's last Annual Base Salary or prior calendar year's

Form W-2 earnings, prorated where appropriate for a partial year period." Doc. 1-1 at 2, ¶ 6 (emphasis added).

Snider carefully sidesteps and does not allege in its Complaint that it satisfied conditions precedent or made severance payments to Chapman on the regular company paydays. *See* Doc. 1 at 4, ¶ 15. Indeed, Snider cannot truthfully allege that it timely paid Chapman's severance on the regular paydays, and its counsel will acknowledge that Snider's first severance payment to Chapman was late. Snider did not pay Chapman any severance until a direct deposit on October 30, 2020, which was at least one week after the last regular company payday on October 23, 2020, *see* Ex. 4 at 2, and one day after the undersigned advised Snider's counsel that Snider could not enforce the non-compete/non-solicitation option contract because, among other things, Snider failed to pay Chapman any promised severance.

The Court must reject any contention by Snider that its failure to timely pay severance on regular company paydays should be excused as an immaterial breach. Without question, Snider's promise to timely pay severance on the regular company paydays goes to the heart of the non-compete/non-solicitation option contract. If Snider invokes the non-compete/non-solicitation option contract and expects the employee to not work and earn income, then Snider must fulfill its promise to pay the employee the agreed severance amount on Snider's regular company paydays during the restrictive period. A material breach "goes to the root or essence of the

contract." 15 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 44:55 (4th ed. 2000); *Western Union Telegraph Co. v. Tersheshee*, 230 Ala. 239, 242, 160 So. 233 (1935) ("where there is a breach of a dependent covenant, a condition precedent, which goes to the whole consideration of the contract, the injured party has a right to rescind and recover damages for a total breach"); *Wilson v. Wilson*, 261 N.C. 40, 43, 134 S.E.2d 240, 242-43 (N.C. 1964)) (a breach is substantial and material if it is one that "is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted").

It is beyond credible to suggest that timely severance payments to Chapman on Snider's regular company paydays is immaterial or incidental to the non-compete/non-solicitation option contract. Snider has not stated, and as a matter of law cannot state, a claim upon which relief may be granted for breach of the non-compete/non-solicitation option contract under Alabama and North Carolina law because it undisputedly failed to satisfy the condition precedent of making severance payments to Chapman on the company regular paydays during the term of the restrictive period. The separate non-compete/non-solicitation option contract of Paragraph 6 fails for want of consideration.

**B.      Snider did not satisfy the condition precedent of sending Chapman written notice with return receipt requested.**

In order to invoke the non-compete/non-solicitation option contract of Paragraph 6, Snider "shall provide written notice to [Chapman] of its decision to invoke the provisions of this Paragraph" within ten days of Chapman's separation from Snider. Doc. 1-1 at 2, ¶ 6. The non-compete/non-solicitation option contract of Paragraph 6 does not contain a notice provision. If the Court applies the notice provision of Paragraph 10 over Chapman's objection, a condition precedent of the formation of the non-compete/non-solicitation option contract and Chapman's liability under it is Snider's requirement to provide written notice to Chapman by certified or registered mail *and* return receipt requested. *Id*. at 3, ¶ 10.

Snider does not allege that it provided written notice with return receipt requested, and its Complaint is silent with respect to the notice provision of Paragraph 10. Instead, Snider grossly alleges in a conclusory manner that "[o]n October 5, 2020, in compliance with Paragraph 6, [Snider] provided written notice to Chapman of its intent to invoke the provisions of Paragraph 6." Doc. 1 at 3, ¶ 12. The court may not assume that Snider can prove facts it has not alleged, namely that it complied with the notice provision of Paragraph 6 by sending its written notice with return receipt requested. *See Bush*, 2016 WL 324993 at *1 (quoting *Twombly*, 550 U.S. at 563 n.8).

On the face of Snider's October 5, 2020 letter, there is no indication that a return receipt request accompanies the letter. Ex. 1 at 1. Also, the certified mail receipt for the letter demonstrates that Snider did not check one of the two boxes for a return receipt request. *Id*. at 2. Moreover, the Court can take judicial notice of matters of public record, and the USPS tracking website for the parcel number of Snider's October 5, 2020 letter shows the letter was sent certified mail but without a return receipt request. Cf. Ex. 2 and 3.

If the notice provision of Paragraph 10 does not apply to the non-compete/non-solicitation option contract of Paragraph 6, then Snider's claim for breach is due to be dismissed because it is undisputed that the Snider's written notice, it October 5, 2020 letter, was never delivered to or received by Chapman. If the notice provision of Paragraph 10 does apply over Chapman's objection, then Snider still has not stated a claim for breach upon which relief may be granted because, according to Snider's own receipt and the public USPS information, no return receipt accompanies the letter.

The return receipt request is a significant and material condition of the notice provision, particularly in application to an option contract that can only be invoked at Snider's election in writing after Chapman's employment concludes. Mailing the notice with a return receipt request would yield a receipt signature by or on behalf of Chapman, and no restrictive covenant is enforceable under Alabama or North

11353593v.1

Carolina law unless it is reduced to writing and signed by all parties. *See* ALA. CODE § 8-1-192 (2016); N.C. GEN. STAT. §75-4. Chapman's signature with respect to invocation of the non-compete/non-solicitation option contract is missing if Snider does not send its written notice with a return receipt request.

As a matter of law, Snider failed to satisfy the material condition precedent of sending written notice with return receipt requested, and its claim for breach of the non-compete/non-solicitation covenants is due to be dismissed.

**C.    Snider cannot enforce the option contract because it did not provide Chapman written notice of its intent to invoke within ten days of separation.**

It is undisputed that Snider's October 5, 2020 letter attempting to invoke the non-compete/non-solicitation option contract of Paragraph 6 has not been delivered to the intended address or received Chapman. Doc. 1-1 at 4, ¶ 14; Ex. 4 at Pg. 2, ¶¶ 7 and 8. Also, the Court can take judicial notice of the public information available on the USPS tracking website for the parcel number associated with Snider's letter, which shows the letter has not been delivered. Ex. 2 at 1, Tracking History.

Pursuant the unambiguous contract terms, in order for Snider to invoke the non-compete/non-solicitation option contract it "shall provide written notice to [Chapman] of its decision to invoke the provisions of this Paragraph" within ten days of Chapman's separation from Snider. Doc. 1-1 at 2, ¶ 6. The option contract of Paragraph 6 does not contain a notice provision that directs how or in what manner

Snider can "provide" the written notice. Option contracts are to be strictly construed, ambiguities shall be construed against the drafter, and time is of the essence in an option contract unless expressly stated otherwise. *Ex parte Keelboat Concepts, Inc.*, 938 So. 2d 922 (Ala. 2005). The period of time within which an option can be exercised is an inherent ingredient. *Id*.

The mailbox rule does not apply here. The Restatement (Second) of Contracts § 63 (1981) distinguishes between application of the traditional mailbox rule to a bilateral contract and an option contract: "Unless the offer provides otherwise, (a) an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror; but (b) <u>an acceptance under an option contract is not operative until received by the offeror</u>." (Emphasis added). Here, the offer, i.e., the terms of the option contract of Paragraph 6, do not otherwise provide that Snider's written notice of intent to invoke is deemed given when posted in the mail. There is no notice provision within the option contract, and Snider cannot go outside the four corners of the option contract and attempt to rely upon the notice provision of Paragraph 10.

Moreover, it is wholly illogical and fundamentally unfair for Snider to be able to enforce the non-compete/non-solicitation option contract by timely posting its written notice in the mail if the notice is never delivered, as is the case here. Snider

chose the unusual arrangement of placing non-compete/non-solicitation covenants in an option contract, keeping a departing employee in suspense unless and until Snider provides the employee written notice within ten days of termination of its decision to invoke the restrictions. Snider allowed Chapman to separate from the company without giving Chapman written notice. If Snider expects Chapman to be bound by the non-compete/non-solicitation restrictions, then Chapman must receive Snider's written notice of its post-separation decision to invoke.

It is undisputed that Snider's written notice, its October 5, 2020 letter, was never delivered to the intended address or received by Chapman. It is undisputed that Snider, to this day, did not provide written notice to Chapman within ten days of Chapman's separation from the company. As a matter of law and fundamental fairness, the traditional mailbox rule does not apply to an option contract, Snider cannot rely on a notice provision outside of the option contract, and Snider cannot state a claim upon which relief may be granted for breach of the non-compete/non-solicitation option contract.

## II.    SNIDER FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR MISAPPROPRIATION OF TRADE SECRETS.

Counts Two and Three of the Complaint fail to state claims against Chapman for misappropriation of trade secrets in violation of the Alabama Trade Secrets Act and Federal Defend Trade Secrets Act, respectively. Snider's complaint does not

identify any purported trade secret with specificity and, thus, fails to plead sufficiently substantive facts to satisfy the *Twombly/Iqbal* plausible standard.

The Alabama Trade Secrets Act defines a trade secret as information that:

a.  Is used or intended for use in a trade or business;

b.  Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;

c.  Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;

d.  Cannot be readily ascertained or derived from publicly available information;

e.  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy;  and

f.  Has significant economic value.

ALA. CODE § 8-27-2(1) (2015). The burden is on the party asserting the trade secret to show that the trade secret is included or embodied in at least one the categories listed in subpart b. *Public Systems, Inc. v. Towry*, 587 So.2d 969, 971 (Ala. 1991); Comment to § 8-27-2. Information is not a trade secret if it is "head knowledge" that does not satisfy "the embodiment requirement." *See Alagold Corp. v. Freeman*, 20 F. Supp. 2d 1305, 1315 (M.D. Ala. 1998), *aff'd*, 237 F.3d 637 (11th Cir. 2000).

Likewise, the definition of a trade secret under the Federal Defend Trade Secrets Act is limited to "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans,

compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" if "(A) the owner thereof has taken reasonable measures to keep such information secret and; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1838(3).

Snider has not alleged with any specificity or to any meaningful degree a single trade secret that meets the state or federal definition and, instead, relies on vague, conclusory characterizations. For example, Snider grossly alleges that Chapman misappropriated "confidential database customer information" and "confidential, detailed customer data gathered and complied by [Snider]." Doc. 1 at 7, ¶¶ 29 and 31. Yet, Snider does not describe the "customer information" and "customer data" beyond customer names and contact information, which are matters of public record and/or head knowledge, and not embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process. Snider's failure to plead sufficient facts of a protectable trade secret warrants dismissal of its claims for misappropriations of trade secrets. *See Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1057, 1070 (Ala. 2006); *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1273 (M.D. Ala. 2010).

### III.   SNIDER FAILS TO STATE A CLAIM UPON WITH RELIEF CAN BE GRANTED FOR BREACH OF DUTY OF LOYALTY.

In Count Four of the Complaint, Snider alleges that Chapman, while still employed by Snider, solicited unspecified employees of Snider to leave their employment. Doc. 1 at 10, ¶ 48. Fatally, however, Snider does not allege which particular employees, or types of employees, that Chapman allegedly solicited. Alabama's Restrictive Covenants Act limits the scope of an employee non-solicitation covenant to an agent, servant, or employee who "holds a position uniquely essential to the management, organization, or service of the business." ALA. CODE § 8-1-190(b)(1).

Snider does not allege that Chapman solicited managers or high level employees of Snider within the scope of § 8-1-190(b)(1). Upon information and belief, Snider contends that Chapman solicited two service techs employed by Snider, who are not uniquely essential to Snider's business. Any claimed solicitation of a non-essential employee is not prohibited under the Act and, likewise, does not give rise to a breach of duty of loyalty. Snider fails to plead sufficiently substantive facts to satisfy the *Twombly/Iqbal* plausible standard for a claim of breach of a duty of loyalty.

## IV.   SNIDER FAILS TO STAY A CLAIM UPON WHICH RELIEF MAY BE GRANTED FOR TORTIOUS INTERFERENCE OF CONTRACT.

Alabama does not recognize cause of action for attempted tortious interference without damage. In order to establish a prima facie case of tortious interference with a contact or business relation, a plaintiff must show (1) the existence of protectable contract or business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) the plaintiff suffered damage as result of the interference. *White Sands Group, LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

In Count Five of the Complaint, Snider alleges that Chapman, before he was terminated, placed on with a third party vendor, Lee Rodger's Tire, for certain wheels that Snider would then supply to its customer, U.S. Pipe. Doc. 1 at 11, ¶52. Snider further alleges that Chapman, after he was terminated by Snider, asked the vendor to cancel Snider's pending purchase order. *Id.* at ¶ 53. Snider merely contends that "if Lee Rodger's Tire had canceled [Snider's] purchase order," then Snider would have been unable to timely secure the wheels to fulfill its claimed obligations to its customer U.S. Pipe. *Id.* at ¶ 54.

Significantly, Snider does not allege that Chapman's alleged attempted interference with Snider's purchase order to Lee Rodger's Tire had any affect or caused any delay with the fulfillment of the purchase order. Likewise, Snider does not allege that Chapman actually interfered with Snider's ability to timely fulfill its

nondescript "obligations" to the customer. Consequently, Snider has not, and cannot as a matter of law, state a claim upon which relief may be granted for tortious interference with contract or business relations.

/s/ William L. Waudby
William L Waudby (asb-7879-d67w)
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER, LLP
1500 Urban Center Dr., Suite 450
Birmingham, AL 35242
205.709.8985 (Direct)
205.709.8990 (Main)
205.709.8979 (Fax)
bill.waudby@wilsonelser.com

*Attorney for Defendants, Timothy Chapman*
*and Southern Tire Mart, LLC*

## Certificate of Service

I hereby certify that on December 22, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Alabama using the CM/ECF system, which will provide notification to all parties via their respective counsel of record.

/s/ William L. Waudby
Of Counsel

11353593v.1