IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SNIDER TIRE, INC.** <br> **D/B/A SNIDER FLEET SOLUTIONS** ) <br>   ) <br>   Plaintiff, ) <br>   ) <br> vs. ) <br>   ) <br> **TIMOTHY CHAPMAN and** ) <br> **SOUTHERN TIRE MART L.L.C.,** ) <br>   ) <br>   Defendant. ) | **CASE NO.: 2:20-cv-01775-AMM** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

**I.   INTRODUCTION**

Defendants' Motion to Dismiss is a hodge-podge attempt to controvert factual allegations of the Complaint while presenting defenses that are not purely legal. The issues related to the request for preliminary injunctive relief on Plaintiff's breach of contract claim should be decided after a hearing and presentation of evidence. The arguments regarding the other causes of action seek a level of detailed information for which the proper avenue of redress is discovery. The pleadings are more than sufficient, and Defendants' Motion should be denied.

**II.   ARGUMENT AND LAW**

   **A.   THE STANDARD ON A MOTION TO DISMISS**

Defendants' motion ignores one of the most basic tenets of a 12(b)(6) motion for failure to state a claim. "On a motion to dismiss, the factual allegations in the complaint are taken as true, even if they are subject to dispute." *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018). "[W]hen ruling on a motion to dismiss, the court does not decide disputes of facts." *Guerra v. Flores*, No. 4:14-CV-2470-VEH, 2015 WL 3823939, at *2 (N.D. Ala.

June 19, 2015). Nor may Defendants ignore factual allegations, which their motion does repeatedly. On a motion to dismiss, the "defendants may not 'cherry pick' specific allegations in the complaint that might be insufficient standing alone." *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *3 (N.D. Ill. Nov. 5, 2009).

**B.  PLAINTIFF HAS ADEQUATELY PLEAD A BREACH OF CONTRACT BY DEFENDANT CHAPMAN[1]**

Defendants do not claim that the non-competition agreement is invalid on its face, nor do they contend Chapman is not in breach of the agreement. Rather, Defendants seek to assert defenses to the enforcement of the contract, based upon 1) failure to provide notice, and 2) a delay in payment of the consideration. The first fails because it is a direct challenge to the Complaint's allegations and inappropriate for resolution on a motion to dismiss.[2] The second fails because a delay in payment while the other party is in breach does not invalidate the contract.

      1.    <u>A Delay in Payment Does Not Invalidate the Agreement</u>

Defendants' assert that there was a slight delay in payment of his severance due under the contract, but also admit that Chapman ultimately received the payment in question. Defendants cite to no authority for the proposition a delay in payment automatically invalidates a contract. Given that Chapman began working for Southern Tire Mart before the notice period under the contract had even run and was in open breach of the contract at the time the payment was due, this slight delay is immaterial.

---

[1] Defendant is correct that the Contract contains a choice of law provision calling for the application of North Carolina law and that there is no conflict between the two states' laws. Because Alabama's statutes governing non-competition agreements call for the application of Alabama law to this type of contact, Ala. St. 1-8-197, if the other states law would conflict, it appears appropriate to analyze the issues under Alabama's law.

[2] Plaintiff has amended the Complaint to make clear that it complied with the notice requirements of both Paragraph 6 and 10 of the Contract.

Restatement (Second) of Contracts § 237 (1981) provides, "Except as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." The comments explain,

> Under the rule stated in this Section, a material failure of performance, including defective performance as well as an absence of performance, operates as the non-occurrence of a condition. Under § 225, the non-occurrence of a condition has two possible effects on the duty subject to that condition. See Comment a to § 225. The first is that of preventing performance of the duty from becoming due, at least temporarily (§ 225(1)). The second is that of discharging the duty when the condition can no longer occur (§ 225(2)). A material failure of performance has, under this Section, these effects on the other party's remaining duties of performance with respect to the exchange. It prevents performance of those duties from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur. The occurrence of conditions of the type dealt with in this Section is required out of a sense of fairness rather than as a result of the agreement of the parties. Such conditions are therefore sometimes referred to as "constructive conditions of exchange."

Restatement (Second) of Contracts § 237 (1981). Snider has been under no obligation to pay Chapman during the period he is breaching the Agreement, but nevertheless has done so. The brief delay in the first payment has no impact on the party's rights and obligations under the Agreement.

Defendants' contention that the payment was a "condition precedent" to his duty not to compete is a straw man.

> A condition precedent is " '[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.' " *Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc.*, 62 So.3d 1020, 1025 n. 5 (Ala. 2010) (quoting Black's Law Dictionary 312 (8th ed. 2004))."

*CAM Investments, LLC v. Totty*, 128 So. 3d 749, 753 (Ala. Civ. App. 2013); *see also Mosely v. WAM, Inc.,* 167 N.C.App. 594, 600, 606 S.E.2d 140, 144 (2004) ("A condition precedent is a fact or event that must exist or occur before there is a right to immediate performance, before there is

a breach of contract duty."). See also Restatement (First) of Contracts § 250 (1932).

Nothing in the contract states payment of severance is a "condition precedent" to Chapman's obligations. The only condition is that Plaintiff invokes the restrictions, which was done. Payment of severance is the consideration for the restrictions, not a condition to the restrictions. This is proven because Chapman's obligation to comply with the restrictions began when notice of the intention to invoke was mailed. This was before the date any payment under the contract was due. Where a payment is scheduled to be made after a party's obligation arises, it is not a condition precedent. *Maul v. Eiland*, 83 Ala. 314, 317, 3 So. 688, 689 (1888).

Defendants' real argument is that the delay in payment relieved Chapman of his obligations. He states this as a "failure of consideration." But in making this argument, Defendants ignore the fact that the alleged breach is a delay, not non-payment. A delay is not a material breach that relieves Chapman of his duties under the contract.

> In determining the materiality of delay in performance, the following rules are applicable:
>
> (a) Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party.

Restatement (First) of Contracts § 276 (1932). Defendants do not argue that the date of payment of the severance was of vital importance. It was not and so did not relieve Chapman of his obligations under the contract's non-competition provision.

### 2. The Complaint Properly Pleads Notice as Called for by the Contract

Paragraphs 12 – 14 of the Complaint allege:

"12.

On October 5, 2020, **in compliance with Paragraph 6 of the Employment Agreement**, Plaintiff provided written notice to

Chapman of its intent to invoke the provisions of Paragraph 6 of the Employment Agreement for a period of nine months.

13.

Pursuant to the Employment Agreement, all notices to be given under it are deemed completed when mailed.

14.

Mr. Chapman's receipt of the mailed notice is not germane to whether notice has been properly given under the Employment Agreement." (Emphasis added).

Defendants' main argument that these allegations are insufficient is that they refer to only Paragraph 6 of the Contract, whereas the details of the notice required by Paragraph 6 are found in Paragraph 10. This is disingenuous. Defendant is fully aware that Plaintiff intends to present evidence that the required notice was sent by certified mail, return receipt requested, as required by Paragraph 10. If it had not done so, Plaintiff would not have brought this suit.

"To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, ... but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted). "The Court must accept Plaintiff's allegations as true, view them in the light most favorable, and consider that plaintiff need not plead every possible detail in support of her claims." *Freeman v. Russell Cty. Sheriff Heath Taylor*, 2016 WL 7173885, at *4 (M.D. Ala. Nov. 8, 2016), report and recommendation adopted, 2016 WL 7175610 (M.D. Ala. Dec. 8, 2016). Whether Plaintiff sent notice certified mail return receipt requested is a level of factual detail that is not necessary in evaluating the sufficiency of the Complaint. Nevertheless, if the Court concludes that Plaintiff should explicitly state in the Complaint that it mailed the required notice certified mail return receipt requested, Plaintiff is more than willing to amend the Complaint to make this explicit.

Defendant argues notice was not properly given based on information from the U.S. Postal services website. That information is outside the Complaint. Further, the argument is based on unauthenticated website print outs including one related to an unknown letter with no relationship to this case. To suggest that these unauthenticated print outs unequivocally prove that the notice was not sent with a return receipt requested is specious. It would require making several assumptions about the information set forth in the documents, including that the lack of the term "return receipt" on the print out regarding Snider's letter means that it was not sent return receipt requested. But there simply is nothing to support this assumption without testimony of someone who knows what information the website shows, when it shows it, and that it always shows it.[3] Counsel is not a witness and he is attempting to have inferences drawn in his favor on a motion to dismiss from materials outside the pleadings.

Finally, Defendants argue it is unfair to hold Chapman to the contract because he never received the notice.[4] This argument directly contradicts the Contract that states, "All notices required and permitted to be given under this Agreement shall be in writing and shall be deemed to have been given when mailed by certified or registered mail, return receipt requested addressed to the Intended recipient …." This commonly used form of notice known as the mailbox rule is put in contracts to protect the parties against deficient service by the U.S. Postal Service. "While the general rule for options contracts requires actual receipt, receipt is not required if the [contract] itself provided otherwise." *EOG Res., Inc. v. Berwick Res., L.P.*, 2015 WL 11090691, at *6 (D.

---

[3] The information on the website is not subject to judicial notice. Rule 201 of the Federal Rules of Evidence permits a court to "judicially notice a fact that is not subject to reasonable dispute because it" either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *Bryant v. Ford*, 967 F.3d 1272, 1275 (11th Cir. 2020). Because Snider will present evidence that it did send notice certified mail return receipt requested, the accuracy of the information Defendant presents is reasonably questioned.

[4] Plaintiff intends to present evidence at the hearing on its motion for preliminary injunction that one of its employees orally notified Defendant at the time of his termination that Snider intended to exercise the contract rights. While Defendant may dispute this occurred, that is an issue of fact inappropriate for consideration on a motion to dismiss.

Mont. 2015). *See also Restatement Second of Contracts* (1981) §63. That Chapman did not receive the notice is irrelevant.

Defendants claim "the mailbox rule does not apply here," citing to the Restatement of Contracts. They submit that in an option contract, receipt of the acceptance is legally required. What he ignores is that the section of the Restatement he cites explicitly notes that the rule is in place only if the offer does not provide otherwise, "Unless the offer provides otherwise…" Restatement (Second) of Contracts (1981) §63. Here, the contract provides otherwise, and the default rule is inapplicable.

Defendant further claims that the notice provision in Paragraph 10 of the Agreement cannot be applied to the option given in Paragraph 6. He cites no authority for this argument. There is none. Nothing requires all the elements of an option contract to be contained in one section of an agreement. That the method of notice is spelled out in Paragraph 10 instead of Paragraph 6 is no bar to enforcement. In sum, the Complaint alleges Plaintiff properly exercised its rights and gave appropriate notice to Chapman, and nothing Defendants posit can overcome those affirmative allegations on a motion to dismiss.

    **C.**    **PLAINTIFF HAS ADEQUATELY PLEAD A THEFT OF TRADE SECRETS**

Defendants' arguments on Plaintiffs theft of trade secrets claims contend Plaintiff has not adequately plead the existence of a trade secret and argues that the information at issue is "head knowledge." They argue, "Snider does not describe the 'customer information' and 'customer data' beyond customer names and contact information…." This argument ignores the Complaint's allegations:

> 29.
>
> Plaintiff maintains a confidential database of customer information that its employees use **to track work done and work to be done for its customers**.

The database is not simply a set of names and phone numbers. It is the compilation of the work being performed for and to be performed for Snider's customers. Certainly, Defendants would love to know what work and product Snider anticipates providing each of its customers so that they could compete with Snider for that business. That information is not public.

In any event, Defendants' suggestion that compilations of publicly available information are not trade secrets is wrong as a matter of law. Both Alabama's Trade Secrets Act and the Defense of Trade Secrets Act define the term "trade secret" to include "compilations" of information. That is because compiling information into a form that makes it useful requires a significant investment of time and resources and is deserving of protection. "[A] compilation of data, even if the component parts are in the public domain, may be protectable as a trade secret if it would require substantial time, effort, and expense to recreate the compilation." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 897 (N.D. Ill. 2019).

In *Movie Gallery, US, LLC v. Greenshields*, 648 F. Supp. 2d 1252 (M.D. Ala. 2009), the court stated:

> Greenshields's contention that the detailed customer lists were not trade secrets is clearly incorrect. The Alabama Supreme Court has stated that "it is undisputed ... that customer lists may ... be afforded the protection of a trade secret." *Public Systems, Inc. v. Towry*, 587 So.2d 969, 973 (Ala.1991) (finding that protection is afforded to compilations that are not just lists, but that "contain[ ] specific information about customers, for example, their buying habits"). The customer lists at issue here contained a great deal of information, including the buying habits of Movie Gallery's customers. Additionally, the compiled-customer information meets all of other the requirements of a "trade secret" as defined by 1975 Ala.Code § 8–27–2. This information was not generally known in the industry because it was created and developed by Movie Gallery and was specific to the clients and customers of its Video Library business. It was not readily derivable from public information because it contained detailed and valuable compilations of information from hundreds of small rural stores over thousands of miles; even if one visited the stores and was able to obtain some

>information from the owner, the internal Movie Gallery information pertaining to each customer would still be confidential. *See Unisource Worldwide v. South Central Alabama Supply, LLC*, 199 F.Supp.2d 1194, 1209–10 (M.D.Ala.2001) (Dement, J.) (finding customer histories and price lists to be trade secrets under Alabama law). Moreover, Movie Gallery took reasonable steps to keep this information confidential by requiring employees to sign ethics policies acknowledging that they would not reveal the information, by password protecting the computer systems that stored the information, and by entering into confidentiality agreements (like the one with Greenshields) whenever that information was disseminated to a potential competitor. Therefore, under well-settled principles of trade-secrets law, this information constitutes a trade secret.

*Id.* at 1263–64.

Courts in jurisdictions that have adopted definitions of trade secrets similar to the definitions that exist under Alabama's Trade Secret Act and the DTSA have routinely concluded that compilations of customer information constitute trade secrets. *See, e.g.*, *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 540 (W.D. Pa. 2018) ("Under this standard, the amended complaint is sufficient, as Liberty Mutual alleges that Gemma misappropriated various documents, including customer lists and other customer information, which have been held to constitute trade secrets."); *Jarosch v. Am. Family Mut. Ins. Co.*, 837 F. Supp. 2d 980 (E.D. Wis. 2011); *Am. Family Mut. Ins. Co. v. Roth*, 485 F.3d 930, 934 (7th Cir. 2007) ("…the customer information in the database is a trade secret."); *Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543, 545–46 (9th Cir. 2008) ("Gallagher's customer–related information, such as its customers' key contacts and preferences, was a trade secret."); *Union Nat. Life Ins. Co. v. Tillman*, 143 F. Supp. 2d 638, 644 (N.D. Miss. 2000). Snider has adequately alleged that the information Defendants took and used was a trade secret, not publicly available head knowledge.

### D. PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM FOR BREACH OF DUTY OF LOYALTY

Defendants' arguments regarding breach of duty of loyalty misapprehend the events giving rise to the claim. They seem to suggest that this claim is based on post-employment conduct and reference Alabama's prohibition on contracts restricting post-employment solicitation. But the allegations are not only of post-employment solicitation. They allege that during his employment, Chapman solicited Snider employees to leave.[5] Soliciting employees to leave their employment while actively employed is an actionable breach of the duty of loyalty. *L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 813 F.2d 332, 337 (11th Cir.), decision clarified on denial of reh'g sub nom. *L.A. Draper & Son, Inc. v. Wheelbrator-Frye, Inc.*, 821 F.2d 590 (11th Cir. 1987).

### E. PLAINTIFF HAS ADEQUATELY PLEAD A TORTIOUS INTERFERENCE WITH A CONTRACT CLAIM

Defendants argue that Plaintiff's tortious interference with contract claim fails because there were no damages resulting from Chapman's wrongful conduct. Paragraph 60 of the Complaint alleges that this conduct caused Snider damages. The fact Snider was ultimately able to fulfill its obligations to its customer in spite of Defendants' misconduct does not mean it did not damage Plaintiff. Plaintiff necessarily expended the time of its employees in responding to the misconduct. Defendants do not assert that the Complaint's allegation of damages is insufficient and again, notice pleading requires plausibility, not specificity. *See Ellis v. Bureaus, Inc.*, 2017 WL 3034327, at *6 (S.D. Ala. 2017) ("Portfolio is again attempting to convert a plausibility requirement into a specificity requirement; the complaint meets the former and need not satisfy the latter.").

---

[5] Complaint ¶ 48.

### III. CONCLUSION

Defendants' motion to dismiss ignores factual allegations, misapplies the applicable law, and relies on materials outside the pleading. It must be denied.

Wherefore, Plaintiff prays that the Court deny Defendants' Partial Motion to Dismiss.

Done this 19th day of January 2021.

                                          Respectfully submitted,

                                        */s/ Edward F. Harold*
                                        EDWARD F. HAROLD
                                        AL Bar No. asb-0669-d55h
                                        FISHER & PHILLIPS LLP
                                        201 St. Charles Avenue, Suite 3710
                                        New Orleans, LA  70170
                                        Telephone: 504-522-3303
                                        Facsimile:  504-529-3850

                                        **ATTORNEY FOR PLAINTIFF**

-12-

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing Memorandum in Opposition to Defendants' Partial Motion to Dismiss with the Clerk of Court using the ECF-System, which will send notification of same to the following:

William Waudby
3348 Peachtree Rd. NE
Suite 1400
Atlanta, GA 30326

DATED this the 19th day of January 2021.

                                                                                                   *s/Edward F. Harold*
                                                                                                   EDWARD F. HAROLD