

Personal and Confidential

October 5, 2020

*Via US Priority Mail*
Mr. Timothy Chapman
3412 Old Wood Lane
Birmingham, AL 35243

                Re:    **Post-Employment Restrictions**

Dear Timothy:

       As a follow up to your resignation from employment with Snider Tire on October 2, 2020, I am writing to advise you of certain post-employment restrictions contained in your December 6, 2019 Employment Agreement with Snider Tire (the "Employment Agreement") (see attached).

       Pursuant to Paragraph 6 of the Employment Agreement, Snider Tire has elected to invoke its post-employment restrictions from the date of separation from employment through July 1, 2021. Per the terms of the Employment Agreement, you shall receive payment of your prior year's Form W-2 earnings through that date. Please note that the Confidential Information protections set forth in Paragraph 5 of the Employment Agreement remain in full force and effect as applicable through and after July 1, 2021.

       Please let me know if you have any questions regarding these restrictions.

Sincerely,

Rich Cannon
Vice President, HR

enclosure

PPAB 5016436v1

                                        **EXHIBIT B**



(A EXISTING EMPLOYEE)

EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is made this day of December 6, 2019 between Snider Fleet Solutions, Inc., (the "Company"), and Timothy Chapman ("Employee").

WHEREAS, Employee has been employed by the Company since July 1, 2017 and currently serves in the position of Fleet Account Manager for the Company;

WHEREAS, as of December 6, 2019, which serves as consideration for the obligations contained herein; and

WHEREAS, the parties now desire that the terms and conditions of Employee's employment with the Company be documented as set forth in this Agreement.

NOW, THEREFORE, the parties, intending to be legally bound and in consideration of the promises and mutual covenants and agreements contained herein, hereby stipulate and agree as follows:

1. **Term of Employment.** The Company hereby employs Employee and Employee hereby accepts employment as Sr. Fleet Account Manager of the Company. Employment shall be at-will, meaning that it may be terminated by either party at any time, with or without advance notice. This Agreement does not establish any agreement of the parties to employment for any specific period or length of time.
2. **Duties of Employee.**

(a) Employee shall perform such duties as may be reasonably required by the Company's management from time-to-time. In addition to these services, Employee will be responsible for rendering such other services and duties as the management or other representative authorized of the Company may, from time to time, assign to him.

(b) Employee shall at all times discharge Employee's responsibilities and duties in compliance with the rules and regulations of the Company and in accordance with the policies and directives of the Company adopted from time to time.

(c) Employee shall serve the Company faithfully in the performance of his/her duties and shall devote his/her time and best efforts to his/her employment, including the requirements of the Company and the performance of his/her duties. Employee shall not during the term of this Agreement be engaged in any other business activity which materially interferes with his/her obligations under this Agreement, whether or not such business activity is pursued for gain, profit, or other pecuniary advantage, without the prior written approval of the Company.

3. **Compensation.** For all services rendered by Employee under this Agreement, Employee shall be entitled to compensation in accordance with the following:

(a) **Base Salary.** From the commencement of employment under this Agreement, Employee shall be paid an annual salary ("Annual Base Salary") of $50,000.00. Employee shall be paid according to the Company's normal payroll practices, less normal and appropriate withholdings. The Annual Base Salary may be adjusted at the Company's discretion.

4. **Benefits.** Employee shall receive with other similarly situated Employees of the Company, all of the benefits to be established by the Company, together with the following additional fringe benefits, provided that Employee is otherwise eligible and desires to participate:

(a) **Expenses.** Reimbursement for all business expenses which are ordinary, necessary and reasonable, including, without limitation, travel expenses, incurred by Employee in accordance with the policies, practices and procedures of the Company that may be in effect from time to time and in connection with the performance of Employee's duties pursuant to Paragraph 2 of this Agreement provided that Employee presents appropriate written vouchers, bills, reports or other substantiation for such expenses in a form acceptable to the Internal Revenue Services and in compliance with the Company's then applicable policy;

(b) **Other Benefits.** Other benefits shall include participation in all Company sponsored group insurance policies and programs, and retirement programs, all of which benefits shall be subject to the terms and conditions of any applicable policies or plans. Notwithstanding anything to the contrary contained herein, the Company shall not be obligated in any manner to put into effect any plans or benefits not presently in existence, to keep in effect any plans or benefits presently in existence or to provide special benefits to Employee.

(c) **Vacation.** Employee shall be granted his current number of weeks of vacation per year based on years of service, to be used under the terms of the Company's vacation policy.

## 5. Covenant Not to Disclose Confidential Information.

(a) It is stipulated and agreed that the Company is engaged in the business of selling and servicing the following: medium truck tires for commercial vehicles, the manufacturer of retreaded commercial truck tires, industrial forklift tires, as well as the sale of servicing related products for use in the commercial truck industry, the "Business". Also included in the "Business" is the selling and servicing of light, medium & heavy trucks and trailers, forklifts and other types of equipment for fleets and other companies. It is further stipulated and agreed that as a result of Employee's employment by the Company, Employee has and will continue to have access to valuable, highly confidential, privileged and proprietary information not generally available in the public domain relating to the Company's Business (the "Confidential Information"). For purposes of this Agreement, "Confidential Information" means client lists, client requirements and specifications, financial data, sales figures, costs and pricing figures, marketing and other business plans, product development information, computer programs and listings, marketing concepts, personnel matters, methods, processes, techniques, or any other information relating to the Company's sales, technology, research data, and all other know-how, trade secrets or proprietary information, or any copies, elaborations, modifications and adaptations thereof, which are in the possession of the Company and which have not been published or disclosed to, and are not otherwise known to, the public, or which were not developed by Employee prior to his/her employment with the Company. It is further acknowledged that the unauthorized use or disclosure by Employee of any of the Confidential Information would seriously damage the Company in its Business.

(b) As a consequence of the above, with respect to any Confidential Information which is obtained by Employee during or as the result of Employee's performance of services for the Company and/or its clients, vendors, suppliers and distributors and which is not generally available to the public, whatever its nature and form and whether obtained orally, by observation, from written materials or otherwise, Employee agrees as follows:

(i) Employee will hold all such Confidential Information in strict confidence and will not use, publish, divulge or otherwise reveal or allow to be revealed any portion thereof to any third person, company or other entity, except to or with the prior written consent of the Company; and

(ii) Employee will use all reasonable precautions to assure that all such Confidential Information is properly protected and kept from unauthorized persons or entities, and will immediately report to the Company any misuse of such Confidential Information that Employee may encounter by another person or entity.

(c) Pursuant to the federal Defend Trade Secrets Act of 2016, 18 USC § 1832, the Company shall not retaliate or take adverse action against Employee, and disclosure shall not be a violation of this Agreement if it is based on Employee's disclosure of information that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

6. **Covenant Not to Compete/Solicit/Interfere.** Within ten (10) days of separation from employment for any reason, the Company shall provide written notice to Employee of its decision to invoke the provisions of this Paragraph. This notice shall include the duration of the restrictions set forth below, not to exceed twelve (12) months. In the event that the Company invokes the restrictions set forth under this Paragraph, during the term of such restrictions, it shall pay to Employee as post-employment severance, paid on regular Company paydays, the greater of Employee's last Annual Base Salary or prior calendar year's Form W-2 earnings, prorated where appropriate for a partial year period. Under these restrictions, Employee will not:

(a) engage in, manage, operate, control, or participate in the management, operation, or control of, be employed by, associated with, lend his/her or its name or any similar name to, or render services or advice, in a role that is the same or similar to that Employee performed for the Company under this Agreement, to any business or individual for the purpose of marketing, selling or servicing products or activities which compete with the products or activities of the Business (as defined above), anywhere within the Territory (as defined below), without the written consent of the Company;

(b) induce or attempt to induce any person who has been an employee of the Company in the prior twelve (12) months to leave the Company's employment, (ii) in any way interfere with the relationship between the Company and any of its employees, (iii) employ, or otherwise engage as an employee, independent contractor or otherwise, any employee of the Company, or (iv) induce or attempt to induce any client, supplier, licensee or business relation of the Company to cease doing business with the Company, or in any way interfere with the relationship between any client, supplier, licensee or business relation of the Business; or

(c) solicit the business of any Person known to Employee to be a customer/client of the Company, if Employee had personal and material contact with such Person, or had access to Confidential Information regarding such Person, with respect to products or activities which compete with the products or activities of the Company.

(d) nothing set forth in this Paragraph shall prohibit Employee from owning not in excess of 1% in the aggregate of any class of capital stock of any corporation if such stock is publicly traded and listed on any national or regional stock exchange or reported on the NASDAQ Stock Market.

(e) As used herein, the term "Territory" shall mean:

(i) A 65 mile radius of the Company's Birmingham, AL locations.

(f) As used herein, the term "Person" shall mean an individual, partnership, company, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof.

7. **Surrender of Books and Records.** Employee acknowledges that all files, electronic information, records, lists, designs, specifications, books, products, plans and other materials or property owned or used by the Company in connection with the conduct of its business shall at all times remain the property of the Company, and that upon termination or expiration of this Agreement for any reason or upon the request of the Company, Employee will immediately surrender to the Company all such materials.

8. **Entire Agreement.** This Agreement contains the entire agreement of the parties hereto and supersedes and replaces all prior agreements, arrangements and understandings, whether written or oral. Moreover, this Agreement shall not be modified or changed in any respect except by a writing executed by both parties hereto.

9. **Successors and Assigns.** The rights and obligations of Employee under this Agreement, including but not limited to the provisions of Paragraphs 5 and 6 herein, shall inure to the benefit of the Company, its successors and assigns, and shall be binding upon Employee and Employee's respective successors, heirs and assigns. The Company shall have the right to assign, transfer or convey this Agreement to its affiliated companies, successor entities, or assignees or transferees of substantially all of the Company's business activities. This Agreement, being personal in nature to Employee, may not be assigned by Employee without the Company's prior written consent.

10. **Notice.** All notices required and permitted to be given under this Agreement shall be in writing and shall be deemed to have been given when mailed by certified or registered mail, return receipt requested, addressed to the intended recipient as follows, or at such other address as is provided by either party to the other:

If to the Company: Snider Fleet Solutions
200 East Meadowview Road
Greensboro, North Carolina 27406
Attn: Rich Cannon

       If to Employee: Timothy Chapman

11. **Choice of Law; Jurisdiction; Venue.** This Agreement, and any dispute or controversy arising out of or relating to this Agreement, shall in all respects be governed by and construed according to the laws of the State of North Carolina, without giving effect to any principles of conflict of law or choice of law of such State or any other jurisdiction. Any suit or proceeding arising out of or relating to this Agreement may be instituted and maintained in the state courts of North Carolina located in Guilford County or the United States District Court for the Middle District of North Carolina. The Parties hereby irrevocably consent to jurisdiction and venue in such courts, and the Parties waive objection to the jurisdiction and venue being in such courts. Nothing herein shall limit the right of the Company to proceed against the Employee in the courts of any other jurisdiction.

12. **Litigation and Regulatory Cooperation.** During and after Employee's employment, Employee shall cooperate fully with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company which relate to events or occurrences that transpired while Employee was employed by the Company. Employee's full cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times. During and after Employee's employment, he also shall cooperate fully with the Company in connection with any investigation or review of any federal, state or local regulatory authority if any such investigation or review relates to events or occurrences that transpired while Employee was employed by the Company. The Company shall reimburse Employee for any reasonable out of pocket expenses in connection with Employee's performance of obligations under this Paragraph

13. **Other Agreements/Warranties.** Employee warrants that he/she is not bound by the terms of a confidentiality agreement or non-competition agreement or any other agreement with a former employer or other third party which would preclude him/her from accepting employment with the Company or which would preclude him/her from effectively performing his/her duties for the Company. Employee further warrants that he/she has the right to make all disclosures that he/she will make to the Company during the course of his/her employment with the Company. Employee agrees that he/she shall not disclose to the Company, or seek to induce the Company to use, any confidential information in the nature of trade secrets or other proprietary information belonging to others and that in the event that the Company directs Employee to perform tasks that would result in the disclosure or use of any such confidential information, that he/she shall notify the Company in advance of any such disclosure.

14. **General Provisions.**

(a) This Agreement may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.

(b) The parties may waive any breach or non-fulfillment by the other party of any provision of this Agreement. Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of, or estoppel with respect to, any subsequent breach.

(c) If the scope of any restriction contained in this Agreement, including without limitation the time limitations associated therewith, is determined by a court of competent jurisdiction to be too broad to permit enforcement thereof to its fullest extent, then such restriction shall be enforced to the maximum extent permitted by law, and the parties hereby consent and agree that such scope may be modified judicially in any proceeding brought to enforce such a restriction.

(d) Employee covenants, agrees, and recognizes that because the violation, breach, or threatened breach of any of the provisions in this Agreement would result in immediate and irreparable injury to the Company, the Company shall be entitled, without limitation of remedy, (i) to an injunction or other equitable relief restraining the Employee from any violation of this Agreement to the fullest extent allowed by law or equity, and (ii) to receive all such amounts to which the Company would be entitled as damages under law or at equity. Nothing herein shall be construed as prohibiting the Company from pursuing any other legal or equitable remedies that may be available to it for any such violation, breach, or threatened breach.

(e) The paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

f. The provisions of Paragraphs 5 and 6 of this Agreement shall survive the termination of Employee's employment with the Company as set forth herein.

(g) Employee has carefully read and considered the provisions of this Agreement and agrees that the restrictions set forth herein are fair and reasonably required for the Company's protection.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date first above written.

Employee:

*Timothy Chapman*

247.215.807. 10.200.222.171
2019-12-19T14:38:39.000Z

Snider Fleet Solutions, Inc.

By: _____
Its: VP HR

200 East Meadowview Road
Greensboro, NC 27406 USA
(336) 691-5480  (800) 528-2840
(336) 685-6120 fax
www.Sniderfleet.com